**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chattanooga Professional Baseball LLC, et al., | No. CV-20-01312-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| National Casualty Company, et al., | |
| Defendants. | |

Before the Court is Defendants' motion to dismiss, which is fully briefed. (Docs. 27, 30, 33.) For the following reasons, Defendants' motion is granted.[1]

**I. Background**

Plaintiffs are twenty-four entities associated with or providing services for nineteen Minor League Baseball ("MiLB") teams in California, Idaho, Indiana, Maryland, Oregon, South Carolina, Tennessee, Texas, Virginia, and West Virginia. (Doc. 23 at 3.) Plaintiffs each held substantially identical commercial first-party property and casualty insurance policies (the "Policies") provided by Defendants. (Docs. 23-1-23-12.) In 2020, MiLB experienced its first-ever cessation since its establishment, which Plaintiffs allege was caused by "continuing concerns for the health and safety of players, employees, and fans related to the SARS-CoV-2 virus; action and inaction by federal and state governments

---

[1] The parties' requests for oral argument are denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

related to controlling the spread of the virus; and Major League Baseball ("MLB") not supplying players to their affiliated minor league teams." (*Id.* at 4.) Following cessation, Plaintiffs submitted claims for coverage under the Policies to Defendants, but Defendants have allegedly denied their claims or intend to do so.[2] (*Id.* at 6.) On July 2, 2020, Plaintiffs filed suit against Defendants in this Court. (Doc. 1.) The operative amended complaint, filed on August 21, 2020, brings claims for breach of contract, anticipatory breach of contract, and declaratory judgment. (Doc. 23.) On September 11, 2020, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The motion is now ripe.

**II. Legal Standard**

    **A. Fed. R. Civ. P. 12(b)(6)**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

    **B. Choice of Law**

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000). Applying Arizona choice-of-law rules, when addressing a claim based on an insurance policy, the

---

[2] Plaintiffs explain that they fall into "two categories—the "Breach Plaintiffs or the "Anticipatory-Breach Plaintiffs—depending on the steps their respective Insurers have taken to avoid honoring their contractual commitments." (Doc. 23 at 7.)

Court applies the law of the "state which the parties understood was to be the *principal location of the insured risk during the term of the policy*[.]" *Beckler v. State Farm Mut. Auto. Ins. Co.,* 987 P.2d 768, 772 (Ariz. Ct. App. 1999) (emphasis in original).  Here, it is undisputed that the insured risk for each Plaintiff rests in the state where each team resides—California, Idaho, Indiana, Maryland, Oregon, South Carolina, Tennessee, Texas, Virginia, or West Virginia.

## III. Discussion

Defendants assert that each of the amended complaint's counts should be dismissed as a matter of law because Plaintiffs are not entitled to recover from Defendants from their COVID-related losses because the Policies include a virus exclusion provision that expressly excludes coverage for losses caused by a virus.  The virus exclusion, which applies to all coverage under the Policies, generally reads, "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism." (Doc. 23-1 at 58.)  Under the law of each of the ten states in which the MiLB teams reside, the Court construes insurance contracts according to their plain and ordinary meaning.[3]  Plaintiffs do not dispute that the virus exclusion's meaning—that policy coverage does not include losses stemming from or related to a virus—is clear and unambiguous.  Rather, they contend that the exclusion's existence should not result in a dismissal of their complaint because (1) whether the losses were caused by the virus is a question of fact that cannot be decided at this juncture and (2) Defendants are estopped from applying the exclusion.  The Court will address Plaintiffs' arguments, in turn.

### A. Factual Dispute

Plaintiffs' argument that a factual dispute exists as to the cause of their loss is not

---

[3] *Tustin Field Gas & Good, Inc. v. Mid-Century Ins. Co.*, 219 Cal. Rptr.3d 909, 914 (Cal. Ct. App. 2017); *Clark v. Prudential Prop. & Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003); *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018); *Kurland v. ACE Am. Ins. Co.*, CV No. JKB-15-2668, 2017 WL 354254, at *2 (D. Md. Jan. 23, 2017); *Groshong v. Mutual of Enumclaw Ins. Co.*, 985 P.2d 1284, 1289 (Or. 1999); *Whitlock v. Stewart Title Guar. Co.*, 732 S.E.2d 626, 628 (S.C. 2012); *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012); *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019); *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019); *W. Virginia Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 489 (W. Va. 2004).

plausible. Plaintiffs' amended complaint explicitly attributes their losses to the virus, stating, "[t]he nature of the virus including its continuing damaging and invisible presence and the measures required to mitigate its spread constitute an actual and imminent threat and direct physical loss or damage to the ballparks (as well as the areas surrounding them) and has contributed to cancellations of the Teams' MiLB games" and "[a]s a result of the virus, attendant disease, resulting pandemic governmental responses, and MLB not supplying players, the Teams have been deprived of their primary source of revenue[.]" (Doc. 23 at ¶ ¶ 58, 71.) Plaintiffs' attempt to create a question of fact by arguing it is unclear whether their losses were caused by the government's orders in response to the virus or the virus itself, (Doc. 30 at 6), is unavailing.

The amended complaint alleges that the government orders in question were issued as a direct result of the virus. It states, "[t]he nature of the virus has caused authorities around the country to issue stay-in-place orders to protect persons and property. . . Indeed, authorities in each of the Teams' respective states have issued such orders." (Doc. 23 at ¶ 45.) Plaintiffs' amended complaint does not allege any fact supporting an alternative theory for the issuance of the government orders. There is no allegation in the complaint that absent the pandemic, the government would have been prompted to issue stay-at-home orders or otherwise inhibit access to the ballparks. Similar COVID-19 causation arguments have been consistently rejected. *See Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at * 6 (W.D. Tex. Aug. 13, 2010) ("While the Orders technically forced the Properties to close[,] the Orders only came about sequentially as a result of the COVID-19 virus. . . Thus, it was the presence of COVID-19 . . . that was the primary root cause of Plaintiffs' business temporarily closing."); *Franklin EWC, Inc. v. The Hartford Finn. Servs. Grp., Inc.*, No. 20-cv-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) ("[U]nder Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply. Nonsense.").

Turning to MLB's failure to provide players, even if Plaintiffs' losses were caused

by such failure—and the virus did not cause such failure—the Policies include an exclusion for losses stemming from the "[s]uspension, lapse or cancellation" of a contract. (Doc. 23-1 at 44.) Again, Plaintiffs do not argue that the exclusion is ambiguous, but rather that it is inapplicable because they have not alleged that a suspension, lapse or cancellation of a contract between MLB and MiLB occurred when MLB failed to provide players to MiLB. Not so. Plaintiffs state in their amended complaint that MLB is contractually obligated to supply Plaintiffs' teams with players but failed to do so. (Doc. 23 at ¶¶ 69-70.) Any effort to ignore the contractual nature of MLB and MiLB's relationship is disingenuous. In sum, the Court rejects Plaintiffs' first argument against the applicability of the virus exclusion.

**B. Estoppel**

Plaintiffs next argue dismissal is inappropriate because they have adequately alleged that Defendants are estopped from enforcing the virus exclusion. Particularly, they contend that regulatory estoppel prevents enforcement of the provision because Defendants were only able to gain regulatory approval for the virus exclusion in 2006 by making misrepresentations[4] to the state insurance commissions. However, regulatory estoppel is a New Jersey state law defense, espoused in *Morton Inter. v. Gen. Acc. Ins. Co. of Am.*, 629 A. 2d 831 (N.J. 1993), which no state whose laws apply has adopted. *See SnyderGeneral Corp. v. General Am. Ins. Co.*, 928 F. Supp. 674, 682 (N.D. Tex. 1996) (collecting cases) (explaining that regulatory estoppel "has been rejected by virtually every other state and federal court to address the issue."). Plaintiffs suggest that, even if no relevant state has adopted regulatory estoppel,[5] lack of current recognition is of no import, because the states *would* recognize it if given the opportunity, each state nevertheless recognizes general equitable estoppel, and, regardless, federal common law governs their estoppel defense.

Plaintiffs' arguments are unpersuasive. First, contrary to Plaintiffs' assertions,

---

[4] Plaintiffs assert that Defendants falsely represented to regulatory commissions, when securing approval, that the exclusion was merely a clarification of current policy in order to avoid premium reductions when, in fact, the exclusion reduced prior coverage.

[5] Plaintiffs argue West Virginia has recognized regulatory estoppel, citing to *Joy Tech., Inc. v. Liberty Mut. Ins. Co.*, 421 S.E. 2d 493 (W. Va. 1992), a case which does not discuss estoppel.

courts in Texas and Indiana have already refused to follow *Morton*'s guidance when given the opportunity, declining to apply regulatory estoppel when facing an unambiguous insurance provision. *Id.; Cincinnati Ins. Co. v. Flanders Elect. Motor Serv., Inc.*, 40 F.3d 146, 153 (7th Cir. 1994). Second, general equitable estoppel is "not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Reno Contracting, Inc. v. Crum & Forster Specialty Ins. Co.*, 359 F. Supp. 3d 944, 952 (S.D. Cal. 2019); *see also Spring Vegetable Co. v. Hartford Cas. Ins. Co.*, 801 F. Supp. 385, 392 (D. Or. 1992) ("estoppel cannot be invoked by an insured to create insurance coverage where none exists under the policy."). Rather, "[t]he doctrine of estoppel prevents the insurer from denying coverage based on printed provisions in the policy that conflict with representations by the insurer or its agents on which the policy holder reasonably relied." *Shoup v. Union Sec. Life Ins. Co.*, 124 P.3d 1028 (Idaho 2005).[6] Plaintiffs, here, make the estoppel defense in attempt to bring virus-related losses within the coverage of the Policies, even though such risks are expressly excluded. Plaintiffs have not alleged that Defendants made representations to them that the virus exclusion did not apply, or that their coverage otherwise differed from that represented in the printed materials. Plaintiffs' estoppel theory—that Defendants should not be able to apply the virus exclusion because it allegedly came into being following misrepresentations made by Defendants to state commissions to avoid premium reductions—is not one that is cognizable under general equitable estoppel. Third, federal common law does not govern Plaintiffs' estoppel defense. "[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implications the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 461 U.S. 630, 641

---

[6] *See also Emmco Ins. v. Pashas*, 224 N.E.2d 314, 318 (Ind. App. 1967); *St. Paul Mercury Ins. Co. v. Am. Bank Holdings, Inc.*, 819 F.3d 728, 739 (4th Cir. 2016); *Mayes v. Paxton*, 437 S.E.2d 66, 68 (S.C. 1993); *Henry v. S. Fire & Cas. Co.*, 330 S.W.2d 18, 31 (Tenn. Ct. App.1958); *Mitchell v. State Farm Lloyds*, No. 05-08-00184-CV, 2009 WL 596611, at *3 (Tex. Ct. App. Mar. 10, 2009); *Harris v. Criterion Ins. Co.*, 281 S.E.2d 878, 881 (Va. 1981); *Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135, 150 (W. Va. 1998).

(1981). The rare circumstances in which federal common law exists are absent here. In sum, Plaintiffs' estoppel defense fails as a matter of law

Plaintiffs have advanced no additional arguments against the applicability of the virus exclusion. Accordingly, dismissal of Plaintiffs' complaint is appropriate.

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 27) is **GRANTED.** The Clerk of Court is directed to terminate the case.

Dated this 13th day of November, 2020.

Douglas L. Rayes
United States District Judge